```
                   UNITED STATES OF AMERICA
                 EASTERN DISTRICT OF MISSOURI
                       EASTERN DIVISION


UNITED STATES OF AMERICA,       )
                                )
              Plaintiff,        )
V.                              ) No. 4:09-cr-00485-JCH
                                )
JAMES PATRICK GRADY,            )
                                )
              Defendant.        )


              TRANSCRIPT OF SENTENCING PROCEEDINGS


              BEFORE THE HONORABLE JEAN C. HAMILTON
                   UNITED STATES DISTRICT JUDGE


                          June 24, 2010




APPEARANCES:

FOR PLAINTIFF:       Howard J. Marcus, Esq.
                     OFFICE OF U.S. ATTORNEY
                     111 S. Tenth Street, Suite 2000
                     St. Louis, MO  63102
                     (314) 539-2200

FOR DEFENDANT:       J. Martin Hadican, Esq.
                     FEDERAL PUBLIC DEFENDER
                     1010 Market Street, Suite 200
                     St. Louis, MO  63101
                     (314) 863-0050

REPORTED BY:         Christine A. Simpson, RMR, CRR
                     Official Court Reporter
                     111 South Tenth Street, 3rd Floor
                     St. Louis, MO  63102
                     (314) 244-7989

Proceedings recorded by mechanical stenography, produced
by computer-aided transcription.
```

```
 1            (Proceedings began at 9:30 a.m.)
 2            THE COURT: United States versus Grady.
 3            MR. HADICAN:  Good morning, Judge.
 4            THE COURT:  Good morning.  This is Cause No.
 5    S1-4:09-CR-485, United States versus James Patrick Grady.
 6    Mr. Grady is here with his attorney Mr. Hadican, and Mr.
 7    Marcus is representing the Government.  This matter is
 8    here for sentencing.
 9            And it's my understanding neither side has filed
10    any objections to the report?  Is that correct?
11            MR. MARCUS:  Yes, Your Honor.
12            MR. HADICAN:  Yes, Your Honor.
13            THE COURT:  I have received the sentencing
14    memorandum of the -- filed by the defendant and the
15    Government's response to that.
16            For the record, let me state the total offense
17    level as found in the report is level 28, and the criminal
18    history category is category one.  The Court will adopt
19    those findings.
20            At this time, Mr. Hadican, is there anything you
21    would like to state in support of your memorandum or with
22    respect to your client?
23            MR. HADICAN:  Please, Your Honor, briefly.  Your
24    Honor, we would like to respectfully request the Court to
25    conclude the proceedings today and impose a minimum period
```

of incarceration if the Court deems that appropriate and thereby take into account not only the necessity of deterrence, not only the necessity of respect for the law, but also taking into account the individual before the Court this morning, Jim Grady.

In support of that particular request, we'd like to point out to the Court some of the highlights we think have been announced in the report on file with the Court. No. 1 is Jim's age; he's 59 years of age. No. 2, his family situation; his immediate family consists of his mother Florence, who is 90-plus years old. Your Honor, to describe Jim's relationship with his mom as a close -- close relationship would be an understatement. She relies on him for comfort, she relies on him for companionship, and she relies on him for counsel. We urge the Court to take that relationship into account in concluding the matter today.

In addition, as the Court knows from reading the report, Jim has a master's degree in divinity. Armed with that particular degree for the last 30-plus years, he has served as a priest in the diocese here in St. Louis. He has faithfully served his church and faithfully served his parishioners, as evidenced by the countless letters of recommendation that have been placed with the Court.

Jim has no prior criminal record. This is his

1   first contact with the criminal justice system.  And
2   insofar as this particular offense is concerned, Your
3   Honor, we have acknowledged our complicity in this offense
4   to the Court and we stand before the Court today for
5   sentencing.
6          Finally, in reaching a conclusion today, we'd like
7   to invite the Court's attention to these letters of
8   recommendation.  Your Honor, if I could adopt a phrase to
9   capture the content of those letters of recommendation,
10  that phrase would be that Jim is a person who cares, a
11  person who cares not only about his family and friends,
12  but also the people to whom he ministers.  And in this
13  particular day and age with our helter skelter society,
14  that particular attribute is like a bright star in a dark
15  night.
16         We ask the Court to take all those factors into
17  account in concluding this matter this morning.
18         THE COURT:  Thank you, Mr. Hadican.  And I meant
19  to mention, as you have, all of the letters.  I
20  appreciated receiving those and I have reviewed every one
21  of them and will make them a part of the record in this
22  case.
23         Mr. Grady, is there anything you would like to
24  state to the Court at this time?
25         THE DEFENDANT:  Yes, Your Honor.  Excuse me.

1   I'm deeply sorry for what this ordeal has caused
2   in terms of pain to my mother, my relatives, my good
3   friends, my former parishioners, my church.  I'm deeply
4   sorry for that.
5         I'm also very grateful for the people who have
6   supported me by letters, prayer, counsel, visits, phone
7   calls.  People who know what's in my heart, I have shared
8   deeply with them and I am very grateful for that, and
9   thank God for them, and I certainly would like to ask
10  those who have helped me so far to continue to pray, as I
11  have been every day.  Thank you, Your Honor.
12        THE COURT:  Thank you.  Mr. Marcus.
13        MR. MARCUS:  Just a couple things, Your Honor.
14  This is a serious offense.  The charge conduct, the
15  admitted conduct, and the count he pled guilty to, they
16  are all very serious offenses and have serious
17  repercussions upon the society we live in.
18        I have looked through the PSR.  I reviewed the
19  letters.  A lot of those factors were taken into
20  consideration in this negotiated plea, when the Government
21  agreed to this plea, an agreement of 80 months.  And I
22  would urge the Court to accept that plea agreement and
23  sentence the defendant according to that plea agreement.
24        If the Court should choose otherwise, again, I
25  would ask the Government -- ask for the option of

```
 1   withdrawing that plea and having this case designated for
 2   trial if that's the case.
 3           If we do proceed to sentencing, I'd ask that the
 4   Court incorporate as part of its sentence the forfeiture
 5   involving the car, the computer, and the currency.
 6           THE COURT:  Thank you.  Pursuant to the Sentencing
 7   Reform Act of 1984 and the provisions of 18 USC, Section
 8   3553(a), it is the judgment of the Court that the
 9   defendant James Patrick Grady is hereby committed to the
10   custody of the Bureau of Prisons to be imprisoned for a
11   term of 80 months.
12           While in the custody of the Bureau of Prisons, the
13   defendant is to be evaluated for participation in the
14   mental health program and sex offender treatment if this
15   is consistent with Bureau of Prisons policies.  Upon
16   release from imprisonment the defendant shall be placed on
17   supervised release for a term of life.
18           Within 72 hours of release from the custody of the
19   Bureau of Prisons the defendant shall report in person to
20   the probation office in the district into which he is
21   released.
22           It is further ordered that the defendant shall pay
23   to the United States a fine of $12,500.  Payments of the
24   fine are to be made to the clerk of the court.  All
25   criminal and monetary penalties are due in full
```

immediately. The defendant shall pay all criminal and monetary penalties through the clerk of the court.

If the defendant cannot pay in full immediately, then the defendant shall make payments under the following minimum payment schedule: During incarceration it is ordered that the defendant pay criminal monetary penalties through an installment plan in accordance with the Bureau of Prisons Inmate Financial Responsibility Program at the rate of 50 percent of the funds available to the defendant. If the defendant owes any criminal monetary penalties when released from incarceration, then the defendant shall make payments in monthly installments of at least $100 or no less than 10 percent of the defendant's gross earnings, whichever is greater, with payments to commence no later than 30 days after release from imprisonment. Until all criminal monetary penalties are paid in full, the defendant shall notify the Court in this district's United States Attorney's Office Financial Litigation Unit of any material changes in the defendant's economic circumstances that might affect the defendant's ability to pay criminal monetary penalties.

The defendant shall notify this district's United States Attorney's Office Financial Litigation Unit of any change of mailing or residence address that occurs while any portion of the criminal monetary penalties remains

unpaid.

It is ordered that the defendant participate in the Financial Responsibility Program while incarcerated if this is consistent with Bureau of Prisons policies.

While on supervision the defendant shall comply with the standard conditions adopted by this Court and the following additional conditions: First, the defendant shall provide the probation officer and the Financial Litigation Unit of the U.S. Attorney's Office with access to any requested financial information. The defendant is advised that the probation office may share financial litigation with the Financial Litigation Unit.

Second, the defendant shall apply all moneys received from income tax refunds, lottery winnings, judgments and/or other anticipated or unexpected financial gains to the outstanding court-ordered financial obligation. The defendant shall immediately notify the probation officer of the receipt of any indicated moneys.

Third, the defendant shall be prohibited from incurring new credit charges or opening additional lines of credit without the approval of the United States Probation Office so long as there is a balance on the court-imposed financial obligation.

Fourth, the defendant shall pay the fine as previously ordered by the Court.

         Fifth, the defendant shall comply with all federal, state and local sex offender registration laws and provide verification of registration to the probation officer.

         Six, the defendant shall participate in a sex offense specific treatment program.  The defendant shall enter, cooperate and complete the program until released by the United States probation officer.  The defendant shall abide by all policies and procedures of the sex offense specific program.  During the course of this treatment the defendant shall be subject to periodic and random physiological testing which may include but is not limited to polygraph testing and/or other specialized assessment instruments.  The defendant shall pay the costs associated with treatment based on a copayment fee established by the United States Probation Office.  Copayment shall never exceed the total cost of treatment.

         Seven, the defendant shall be prohibited from contact with children under the age of 18 without the prior written permission of the probation officer, and shall report to the probation officer immediately but in no event later than 24 hours any unauthorized contact with children under the age of 18.

         Eighth, the defendant shall be prohibited from engaging in any occupation, business, profession or

```
1    volunteer work where he has access to children under the
2    age of 18 without prior written approval of the probation
3    officer.
4            Ninth, the defendant shall not loiter within 500
5    feet of schools, parks, playgrounds, arcades, or other
6    places frequented by children under the age of 18.
7            Tenth, the defendant shall not possess obscene
8    materials as deemed inappropriate by the probation officer
9    and/or treatment staff or patronize any place where such
10   material or entertainment is available.
11           Eleven, the defendant shall not purchase or
12   maintain a post office box or any other type of private
13   mailbox without the written approval of the probation
14   officer.
15           Twelve, the defendant shall submit his person,
16   residence, office, computer or vehicle to a search
17   conducted by United States probation officer at a
18   reasonable time and in a reasonable manner, based upon
19   reasonable suspicion of contraband or evidence of a
20   violation of a condition of release.  The defendant shall
21   warn any other residents that the premises may be subject
22   to searches pursuant to this condition.
23           Thirteen, the defendant shall not possess or use a
24   computer, gaming equipment with web and/or internet
25   capability, or any audiovisual recording or producing
```

equipment except with the written permission of the probation officer.

Fourteen, the defendant shall not possess or use any computer peripheral equipment or any other device with access to any online computer services at any location, including employment, or subscribe to or use any internet service without the prior written approval of the probation office.  In addition, the defendant shall consent to his probation officer or probation service representative conducting random or periodic unannounced examinations of any computer equipment to which he has access, any other personal computers and electronic storage devices to which he has access, including web-enabled cell phones.  The examination may include retrieval and copying of all data from the defendant's computer or any computer to which he has access, any internal and external peripherals, to insure compliance with this condition, and/or removal of such equipment for the purpose of conducting a more thorough inspection.

The defendant shall, at the direction of his probation officer, consent to having installed on the computer at his expense any hardware or software systems to monitor or filter his computer use.  Prior to installation of any such hardware or software systems the defendant shall allow the U.S. Probation Office to examine

1  the computer and/or electronic storage device.  The
2  defendant shall pay for the costs associated with
3  monitoring based on a copayment fee established by the
4  United States Probation Office.  The defendant shall warn
5  any other residents, employers or family members that the
6  computer and any related equipment may be subject to
7  searches pursuant to this condition.
8          Fifteen, the defendant shall advise the probation
9  officer of all computer electronic equipment and
10 web-enabled equipment including cell phones to which he
11 possesses or has access within 24 hours of obtaining the
12 same.
13         Based on the low risk the defendant poses for
14 future substance abuse, the Court suspends the mandatory
15 statutory drug testing requirements.
16         It is further ordered that the defendant shall pay
17 to the United States a special assessment of $100.  That
18 shall be due immediately.
19         In view of the advisory guidelines range and the
20 provisions of 18 USC, Section 3553(a), based upon the
21 serious nature of the instant offense which involved the
22 defendant soliciting a minor for sex and possessing child
23 pornography on his computer, and in consideration of the
24 defendant's lack of a prior criminal record and the
25 binding plea agreement in this case, a sentence of 80

```
 1   months imprisonment which represents a sentence at the low
 2   end of the guideline range followed by a life term of
 3   supervised release and a fine of $12,500 would seem to
 4   address the sentencing objectives of just punishment,
 5   general deterrence and incapacitation.
 6           The maximum term of supervised release is ordered
 7   in view of the nature of the instant offense and public
 8   safety concerns.
 9           Restitution is not ordered as a statutory
10   causation requirement, appears to preclude restitution in
11   child pornography possession cases.
12           Upon release to the community the defendant will
13   need close monitoring therefore the standard conditions of
14   supervision are ordered.
15           Based on the low risk the defendant poses for
16   future substance abuse the Court suspends the mandatory
17   statutory drug testing requirements.
18           Based upon the recommendation of a fine -- based
19   upon the order of a fine, the Court further orders the
20   special conditions regarding financial disclosure, credit
21   restrictions and financial gains.
22           Further, the defendant is to pay the fine as
23   previously ordered by the Court.
24           Based on the nature of the instant offense special
25   sex offender conditions are ordered.  As the offense
```

requires registration as a sex offender, the special condition requiring compliance with sex offender registration laws is imposed.  The special condition for sex offender treatment including submission to polygraph and or other physiological testing is ordered in view of the nature of the instant offence and because of the defendant's interest in children.

Polygraph testing is a part of the treatment process and while not used as a basis for revocation is a useful tool in monitoring the response to treatment and in assessing the risk the defendant poses to the community. As the defendant expressed interest in children ranging from 7 to 17, special conditions prohibiting him from having any contact with children under the age of 18, including being employed in a position where he has access to children under 18, and prohibiting him from loitering in areas where children are frequently found is ordered as a public safeguard.

The special condition prohibiting possession of any stimulating or obscene materials is ordered to reduce the chances of relapse and to assist the defendant in the rehabilitation process.

The special condition prohibiting the defendant from maintaining a post office box or other private mailbox is ordered to reduce the possibility of the

1  defendant diverting contraband items to another location.
2  　　　　The special condition allowing the probation
3  office to search his computer, person, residence or
4  vehicle or office is ordered to place the defendant on
5  notice that these items may be searched, and to allow the
6  probation office these vital tools in monitoring the
7  defendant's compliance with his conditions of supervision
8  and the laws.
9  　　　　As the offense involved the defendant's use of a
10 computer, the special conditions prohibiting the defendant
11 from possessing a computer, electronic equipment, cellular
12 telephones or gaming equipment with internet capability
13 without the permission of the probation office in
14 requiring him to advise the probation office of any such
15 equipment to which he has access is imposed.
16 　　　　It is noted that many of the special conditions
17 while initially very restrictive may be relaxed based on
18 the defendant's response to the treatment program, and
19 with the written permission of the probation office they
20 may be temporarily suspended.  Additionally, based on the
21 defendant's adjustment to the community and to treatment,
22 the term of supervised release can also be reduced by the
23 Court.
24 　　　　Is there anything further at this time?
25 　　　　MR. HADICAN:  Two things, Your Honor.  In the

```
 1   first instance, we'd like to respectfully request the
 2   Court to allow us to voluntarily surrender.
 3           In the second instance, we'd like to ask the Court
 4   to suggest to the Bureau of Prisons that the location be
 5   as close to St. Louis as possible.
 6           THE COURT:  Okay.  And, Mr. Marcus, what is the
 7   Government's position?
 8           MR. MARCUS:  As to the Bureau of Prisons, the
 9   Government has no objection.
10           As to voluntary surrender, I have talked to
11   pretrial services, they're aware of the conditions he is
12   under, there have been no violations, they seem satisfied
13   with his conduct on bond.  The Government would not oppose
14   voluntary surrender with the additional condition of a GPS
15   device affixed to the defendant.
16           MR. HADICAN:  We have no objections to that,
17   Judge.
18           THE COURT:  Okay.  Given that, I will allow the
19   defendant to voluntarily surrender and will add that
20   condition of the GPS to the bond conditions.
21           Mr. Grady, you will be under the same bond
22   conditions with the addition of the GPS and you may
23   voluntarily surrender.  You will be notified by the United
24   States Marshal Service as to when and where you should
25   surrender.  And I will make a recommendation that you be
```

```
1    placed in an institution as close to St. Louis as
2    possible.  As you probably know, the final decision on
3    that is up to the Bureau of Prisons, but I will include
4    that recommendation in my judgment.
5            Is there anything further?
6            MR. MARCUS:  Yes, Your Honor.  Pursuant to the
7    plea agreement the Government would request counts one and
8    two be dismissed.  And the Government would also request
9    again that the forfeiture be included in the sentence.
10           THE COURT:  Okay.  Those counts are dismissed.
11   And the Court will include this language under 18 USC,
12   Section 2253 and 21 USC, Section 853(a), the defendant has
13   forfeited all of his right, title and interest in the
14   property previously identified in the preliminary order of
15   forfeiture which was granted on April 26, 2010.
16           MR. MARCUS:  Thank you.
17           THE COURT:  Thank you.
18           (Court recessed at 9:59 a.m.)
19
20
21
22
23
24
25
```

REPORTER'S CERTIFICATE

I, Christine A. Simpson, Registered Merit Reporter and Certified Realtime Reporter in and for the United States District Court for the Eastern District of Missouri, do hereby certify that I was present at and reported in machine shorthand the proceedings in the above-mentioned court; and that the foregoing transcript is a true, correct, and complete transcript of the electronic recording.

I further certify that I am not an attorney for, nor employed by, nor related to any of the parties or attorneys in this action, nor financially interested in the action.

I further certify that this transcript contains pages 1-18 and that this reporter takes no responsibility for missing or damaged pages of this transcript when same transcript is copied by any party other than this reporter.

IN WITNESS WHEREOF, I have hereunto set my hand at St. Louis, Missouri, this 18th day of March, 2011.

s/Christine A. Simpson, RMR, CRR
_____
Christine A. Simpson, RMR, CRR